SAMUEL M. WOODSIDE

*v.*

HENRY C. MORGAN *et al.*

CHANCERY—*new trial at law.* A court of equity will not grant a new trial in a case at law on the ground of newly discovered evidence which is merely cumulative and is not of a conclusive and decisive character, nor will it be granted to enable witnesses to be impeached, or to allow a party to introduce evidence that he might have obtained on the trial at law by the use of proper diligence.

APPEAL from the Circuit Court of Perry county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. Hammack & Davis, for the appellant.

Messrs. T. T. & D. W. Fountain, and Messrs. Murphy & Boyd Bros., for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Samuel M. Woodside, to enjoin the collection of two judgments, one rendered in the county court of Perry county against the complainant, for bastardy, on the complaint of Mary E. Morgan, and the other in the circuit court of Perry county in favor of Henry C. Morgan against the complainant, in an action for seduction of the said Mary E. Morgan.

Two grounds were set up in the bill for relief: first, that the judgments were obtained through collusion and conspiracy; second, that they were obtained by the false swearing of Mary E. Morgan.

The first ground of relief was abandoned on the trial, and on the hearing upon the evidence introduced on the other ground relied upon, the court found against the complainant and dismissed the bill.

This court has often decided that a new trial will not be granted on the ground of newly discovered evidence where the evidence is merely cumulative. *Skelly* v. *Boland,* 78 Ill. 438; *Clayes* v. *White,* 83 id. 540. Nor will a new trial be granted where the evidence is merely cumulative and not of a conclusive character. *Chapman* v. *Burt,* 77 Ill. 338; *Krug* v. *Ward,* id. 603.

In *Martin* v. *Ehrenfels,* 24 Ill. 187, it was held that newly discovered evidence upon a point to which testimony has already been given on the trial, must be positive and conclusive, and capable of definitely settling the point in controversy at once and conclusively, before it can justify the granting of a new trial. The fact that one of the witnesses who has testified may be impeached on another trial is no ground for granting a new trial.

In *Fuller* v. *Little*, 69 Ill. 229, which was an application by bill for a new trial, it was said, upon the trial there was the sworn statement of one party opposed to that of the other. There is no more than that now appearing in the case. Were a court of chancery to entertain bills for a new trial at law on the allegation of one party that the other had sworn falsely, the occasions would be numerous for applications of the present kind, under a practice where parties testify in their own causes and their conflicting testimony on trials is so frequently witnessed.

With the authorities cited as a guide we will briefly examine the newly discovered evidence relied upon by the complainant to impeach the judgments.

On the trial of the two cases in which judgments were obtained against the complainant, on the main question in dispute there was a direct conflict between the testimony of the witness Mary E. Morgan and the complainant, she testifying that on a certain time and at a certain place he had connection with her and was the father of her child, which he in express terms denied. But there were some circumstances and facts detailed in evidence which convinced the jury, and properly too, that the evidence preponderated in favor of the prosecuting witness. She was, as appears, at the time, living at the house of complainant; he had the opportunity, and in his evidence he admitted that on the morning of July 20, 1872, he went to the girl's bed and put his hands upon her bare breasts and kissed her. This admission before the jury, and the fact that the child was born April 25, 1873, forty-two weeks less one day after the occurrence, doubtless led the jury to believe her statement rather than the unreasonable one of the complainant. Why the complainant was at the girl's bed at the hour of three o'clock in the morning with his hand in her bosom, unless for the purpose of consummating what she testified he did, is in no manner explained by the evidence.

The main evidence now relied upon by the complainant, in addition to his own denial, is the testimony of one R. B. Ward,

who in substance testified that Mary E. Morgan told him, after the trial of the bastardy case, that complainant was not the father of the child and that she received $25 to "swear it to him." If the evidence of this witness was true, and had he given his evidence before the jury when the causes were originally tried, it would doubtless have had some bearing on the result of the cases, but this alleged conversation occurred at the house of Mr. Morgan, and Mrs. Holt was present and she testified that no such statement was made, and in this she is confirmed by the girl and corroborated by the evidence of one Terry, who stated that Ward came to his house from Morgan's and admitted to him that Mary did not talk to him except to say yes or no. Ward's attention was called to this conversation with a view to contradict him, and he denied making any such statement. This witness was so completely contradicted that his evidence would be of but little weight had it been submitted to a jury, and upon what principle a court could grant a new trial to allow such evidence to be introduced, we are at a loss to understand.

The complainant also relies upon the testimony of one Kessinger, to the effect that he had connection with Mary E. Morgan in his house in July or August, 1872. Mrs. Holt testified that the girl remained at home three weeks after she returned from the complainant's, the last of July, before she went to Kessinger's. So that if this witness is correct, he could hardly be regarded the father of the child, and if it be true that he had connection with her after she was pregnant by the complainant, his evidence could have no bearing except it might be to impeach that portion of the girl's evidence that she had not had connection with any person except complainant. And as it has not been the practice to grant new trials merely to enable witnesses to be impeached, as held in the case cited *supra*, this proof could not justify the court to interfere.

The only remaining evidence relied upon by the complainant is the proof that the character of Mary E. Morgan for

chastity was bad in the neighborhood. We do not, however, understand that the witnesses state that her character was bad in that regard until after she left the complainant's house, but however that may be, if her general reputation was bad that fact could have been established as well when the two cases were on trial as now, and courts do not grant new trials to allow parties to introduce evidence that might, with proper diligence, have been obtained and introduced on the first trial. The complainant testified, on the trial of the two cases, that he was not the father of the child; that he had not had connection with the witness Mary Morgan. Now, all this newly discovered evidence is but cumulative and in the nature of impeaching evidence, and not decisive, which, under the authorities cited, is no ground to authorize a court of equity to interfere.

As we perceive no error in the record, the decree will be affirmed.

*Decree affirmed.*